UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

John F. Lawrence,                    :
    Plaintiff,                  :
                                :
v.                                   :    Case No. 3:04cv538 (JBA)
                                :
Wilder Richman Securities Corp.,     :
    Defendant.                  :

**RULING ON PLAINTIFF'S OBJECTIONS TO SANCTIONS RULING [DOC. # 80]**

As detailed in the Court's ruling denying plaintiff's motion for preliminary injunction and granting defendant's motion to dismiss (see [Doc. # 55]), plaintiff John F. Lawrence ("Lawrence") instituted this action seeking a declaratory judgment that the Statement of Claim filed by defendant Wilder Richman Securities Corp. ("WRSC") with the National Association of Securities Dealers, Inc. ("NASD") was not arbitrable, and seeking injunctive relief (including a preliminary injunction) enjoining WRSC from proceeding with the arbitration.

WRSC subsequently moved for sanctions against plaintiff and his attorneys for violation of Fed. R. Civ. P. 11(b) as a result of plaintiff's filing and refusing to withdraw his complaint and subsequent papers filed in this action, including his request for a preliminary injunction, Magistrate Judge Joan Glazer Margolis (on referral from this Court) granted defendant's sanctions motion, see Sanctions Ruling [Doc. # 56], and plaintiff moved for reconsideration, which motion Magistrate Judge Margolis granted,

1

but adhered to her initial ruling in part but clarified that the sanctions award was limited to plaintiff's claim for injunctive relief, see Reconsideration Ruling [Doc. # 77].  Plaintiff has now filed objections to this reconsideration ruling.  See [Doc. # 80].  For the reasons that follow, plaintiff's objections are sustained in part and overruled in part, and the sanctions ruling will be modified as described below.

I.    **Procedural Background**

    A.   This Court's Ruling

    In its Ruling [Doc. # 55], this Court denied plaintiff's motion for a preliminary injunction, on the basis that plaintiff had not established any irreparable harm that would result if the injunction were not granted, and dismissed plaintiff's complaint on its merits, conditioned upon defendant's filing an amended Statement of Claim in the NASD arbitration eliminating its request for return of the $650,194 payment it had made to plaintiff.

    The Court determined that the harm identified by plaintiff was "no more than the consequence of his own choice," finding "untenable" plaintiff's position that he was entitled to "first proceed with his suit against the other Richman entities in this Court, and arbitrate before NASD only if after full discovery and a trial on the merits, the jury concludes that [WRSC] is the only Richman Group entity which could be liable to Lawrence," since

"whether [WRSC] is liable to Lawrence is not the subject of any pending action." Ruling at 7-8. Further, the Court found that the mandatory arbitration clause in the Form U-4 signed by plaintiff was enforceable, noting that "the Second Circuit has squarely rejected the argument that the mandatory arbitration clause in the Form U-4 unconstitutionally requires a plaintiff to forfeit his Fifth Amendment due process right, Seventh Amendment right to a jury trial, or his right to an Article III judicial forum." Id. at 9 (citing Desiderio v. Nat'l Ass'n of Sec. Dealers, 191 F.3d 198, 207 (2d Cir. 1999)). The Court also noted that "the Federal Arbitration Act, which governs the NASD arbitration at issue here, requires arbitration 'even where the result would be the possibly inefficient maintenance of separate proceedings in different forums.'" Id. (quoting Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1984)).

The Court dismissed plaintiff's complaint, on the basis that, inter alia, plaintiff had agreed to arbitrate with defendant and had conceded that "if he ever determines that he has a dispute with [WRSC], that dispute will be subject to mandatory arbitration at [WRSC]'s request." Id. at 15. The Court found no support for plaintiff's contention "that a request for declaratory judgment and claim for restitution [such as those asserted by WRSC in the NASD arbitration] are not arbitrable." Id. at 16.

Lastly, the Court addressed plaintiff's argument that defendant induced him into accepting a $655,194 payment to trap him into submitting to arbitration and that therefore defendant should be equitably estopped from asserting its Statement of Claim, which sought, <u>inter alia</u>, return of any portion of such payment that the arbitrator found it did not owe plaintiff.  The Court examined the December 29, 2003 letter which plaintiff claimed formed the basis for his equitable estoppel argument and concluded that "the Statement of Claim's request that Lawrence return any portion of the amount [WRSC] paid him that the arbitrator found it did not owe Lawrence may be viewed as the attachment of a 'condition' on Lawrence's acceptance of the funds," where the December 2003 letter explicitly stated WRSC "did not place any conditions on [plaintiff's] acceptance of [the money." <u>Id</u>. at 22.  The Court thus acknowledged that defendant's request for return of payment in the arbitration could indicate a "misrepresentation" in the December 2003 letter, a necessary element of an estoppel claim, but found that because defendant had agreed it would amend its Statement of Claim to omit this request, the letter could not be construed as containing any such misrepresentation.  Accordingly, the Court dismissed plaintiff's complaint "conditioned on [WRSC]'s amendment of its Statement of Claim." <u>Id</u>. at 22-23.  WRSC subsequently gave notice to the Court that it had so amended its Statement of Claim.  <u>See</u> Notice

4

[Doc. # 57].[1]

B.   Magistrate Judge Margolis's Sanctions Rulings

In granting defendant's motion for sanctions, Magistrate
Judge Margolis noted that "[i]n denying plaintiff's Motion for
Preliminary Injunction, Judge Arterton flatly rejected
plaintiff's contention that he will suffer irreparable harm,"
reiterating this Court's observation that the harm identified by
plaintiff "is no more than the consequence of his own choice" and
characterizing plaintiff's position concerning inconsistency of
judgments "untenable."  See Sanctions Ruling [Doc. # 56] at 5.
Magistrate Judge Margolis concluded that since any argument
concerning the constitutionality of enforcement of the mandatory
arbitration clause (admittedly executed by plaintiff) had been
"squarely rejected" by the Second Circuit and "as [this Court's]
harsh language indicates," "plaintiff's claims for declaratory
judgment and a preliminary and permanent injunction were not
warranted by existing law or by a nonfrivolous argument for the
extension, modification, or reversal of existing law or the
establishment of new law."  Id. at 5-6.  Magistrate Judge
Margolis left open for later determination against whom sanctions
would be assessed and in what amount, and directed defendant to
file an affidavit detailing the monetary sanctions sought.  Id.

---

[1] Plaintiff's objection to defendant's amended Statement of
Claim is discussed below.

at 7.

Plaintiff subsequently filed a motion for reconsideration, contending: (1) that he had a good faith basis for alleging irreparable harm in connection with his preliminary injunction motion; (2) that he had a good faith basis for filing his complaint, as this Court expressly found a basis for plaintiff's equitable estoppel claim, and plaintiff also had a basis for his claim that a declaratory judgment request is not arbitrable; (3) that defendant violated the Rule 11 "safe harbor" requiring 21 days' notice to the opposing party before filing a sanctions motion; and (4) that defendant's payments to plaintiff negated any Rule 11 claim as a matter of law.  See Reconsideration Ruling [Doc. # 77] at 3-4 (characterizing plaintiff's arguments).  The challenged ruling acknowledges that Rule 11 sanctions are rare, but nevertheless rejected plaintiff's arguments for reconsideration.  Specifically, Magistrate Judge Margolis found that plaintiff's "good faith basis" claims were contradicted by this Court's ruling denying the preliminary injunction motion and dismissing the complaint, and that plaintiff's subsequent filing of a counterclaim against WRSC in the arbitration proceeding did not alter her original ruling granting sanctions.

As to plaintiff's argument regarding the Rule 11 "safe harbor" requirement, Magistrate Judge Margolis found that Rule 11 "affords counsel the opportunity to withdraw the lawsuit or

6

withdraw or appropriately correct the 'challenged paper, claim, defense, contention, allegation, or denial,'" and thus "defendant's demand that plaintiff withdraw the operative complaints does not violate the 'safe harbor' provisions of Rule 11." Id. at 5 (citing Fed. R. Civ. P. 11(c)(1)(A)).  Magistrate Judge Margolis also rejected plaintiff's argument concerning the $655,194 payment on the basis "that defendant did not make these payments in response to plaintiff's claims in the instant action," and based on plaintiff's repeated concession "that he does not have a dispute with this defendant and certainly does not have a dispute that could justify the payment of $650,000 in the form of a settlement." Id. at 6.

C.  Plaintiff's Objections

Plaintiff now objects to Magistrate Judge Margolis's Reconsideration Ruling on the grounds that: (1) "[plaintiff] had a reasonable basis for his irreparable harm argument, including the fact that United States Supreme Court, Second Circuit, Connecticut Supreme Court and Connecticut Superior Court authorities directly supported [his] position and no controlling authority existed to the contrary;" (2) "WRSC violated the Rule 11 safe harbor provisions by demanding that [plaintiff] withdraw his operative complaints in this and the related actions in their entirety, when the respective motions to dismiss such complaints either were denied in part or were granted only on conditions

7

highly favorable to [him];" and (3) "WRSC is barred, as a matter of law, from seeking such sanctions due to the payment of, and WRSC's subsequent waiver of any right to recover, the over $650,000 paid to [plaintiff] in connection with the instant action."  Pl. Obj. [Doc. # 80].

## II.  Standard of Review

In contrast to plaintiff's contention that the more stringent de novo standard of review is applicable to Magistrate Judge Margolis's Reconsideration Ruling, the Second Circuit has rejected this higher standard of review in the context of a ruling imposing sanctions under Fed. R. Civ. P. 37.  See Thomas E. Hoar, Inc. v. Sara Lee Corp., 900 F.2d 522, 525 (2d Cir. 1990) (utilizing clearly erroneous standard).  Other courts have followed the reasoning of Thomas E. Hoar in applying the more lenient "clearly erroneous or contrary to law" standard in the context of Rule 11 sanctions.  See, e.g., Weeks Stevedoring Co. v. Raymond Int'l Builders, Inc., 174 F.R.D. 301, 303-04 (S.D.N.Y. 1997) ("[T]he imposition of sanctions is reviewable under the 'clearly erroneous or contrary to law' standard unless the sanction itself can be considered dispositive of a claim."); Laser Med. Research Found. v. Aeroflot Soviet Airlines, 93civ5747 (PKL), 1994 WL 584665, at *2 (S.D.N.Y. Oct. 24, 1994) ("As to non-dispositive matters, a district court shall reverse a magistrate judge's findings only if they are 'clearly erroneous

or contrary to law.' . . . Ordering a sanction in the amount of attorney's fees is considered non-dispositive since it does not resolve the substantive claims of relief alleged in the pleading."). <u>See also</u> 28 U.S.C. § 636 (clearly erroneous or contrary to law standard applicable to magistrate rulings on non-dispositive motions); Conn. Mag. L. Civ. R. 72.2(b) (same).

## III. Rule 11 Sanctions

Fed. R. Civ. P. 11(b) provides that "by presenting to the court . . . a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances --"

> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed. R. Civ. P. 11(c) further provides that sanctions may be imposed on attorneys, law firms, or parties, if it is determined that Rule 11(b) has been violated.

"The standard for triggering the award of fees under Rule 11

is objective unreasonableness," Salovaara v. Eckert, 222 F.3d 19, 34 (2d Cir. 2000), such that "[a] distinction [is] drawn between a position which is merely losing, and one which is both losing and sanctionable," Sec. Indus. Ass'n v. Clarke, 898 F.2d 318, 321 (2d Cir. 1990).  Thus, "not all unsuccessful arguments are frivolous or warrant sanction," and "to constitute a frivolous legal position for purposes of Rule 11 sanction, it must be clear under existing precedents that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands."  See Mareno v. Rowe, 910 F.2d 1043, 1047 (2d Cir. 1990). Accordingly, "Rule 11 sanctions should be imposed with caution," Knipe v. Skinner, 19 F.3d 72, 78 (2d Cir. 1994), and district courts [must] resolve all doubts in favor of the signer," Rodick v. City of Schenectady, 1 F.3d 1341, 1350 (2d Cir. 1993).

Additionally, evidence of settlement of an action, or of settlement negotiations, can be considered, if relevant, to determine the objective reasonableness of a party's position. See Nat'l Ass'n of Government Employees, Inc. v. Nat'l Fed'n of Fed. Employees, 844 F.2d 216, 222 (5th Cir. 1988) (finding "patent anomaly" in district court's imposition of sanctions where court had "thrice urged the defendants to pay something to settle [the case]"); EMI Catalogue P'Ship v. CBS/Fox Co., 86civ1149, 1996 WL 280813, at *2 (S.D.N.Y. May 24, 1996)(holding court may rely on evidence of settlement negotiations in

evaluating whether action was objectively unreasonable for purposes of award of attorney fees under § 505 of the Copyright Act).

## IV.  Discussion

As noted above, plaintiff's objections to Magistrate Judge Margolis's Reconsideration Ruling are threefold and relate to (1) the claimed good faith basis of his irreparable harm argument; (2) defendant's alleged violation of the Rule 11 "safe harbor" requirement; and (3) the inappropriateness of Rule 11 sanctions in light of the conditional dismissal of plaintiff's complaint.

### A.   Plaintiff's Irreparable Harm Argument

Plaintiff's good faith argument for claiming irreparable harm in connection with his motion for a preliminary injunction is that "the most fundamental irreparable harm which Lawrence would suffer from improperly being forced to arbitrate WRSC's original Statement of Claim would be the deprivation of the substantive and procedural rights (including his Constitutional jury right and his federal rights to obtain full discovery) to which Lawrence would be entitled were the alleged dispute litigated in federal court."  Pl. Obj. at 15.  In support, plaintiff cites Supreme Court and Second Circuit authority for the proposition that "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit [and] a party necessarily suffers irreparable harm, if he is

forced to arbitration . . . when he is not obligated to do so."
Id. at 16-17 (citing cases).  However, notwithstanding this
authority, plaintiff ignores the crucial fact that, as he has
conceded, he agreed to arbitrate all disputes with WRSC pursuant
to an enforceable mandatory arbitration clause in the form U-4
which he executed.  As the Court held in its Ruling, any
suggestion that this clause is unenforceable was "squarely
rejected" by the Second Circuit.  See Ruling at 9.  Thus,
notwithstanding the precedent cited by plaintiff, his claim of
irreparable harm based on being forced to arbitrate where he had
not agreed was patently frivolous because, as he acknowledged, he
had agreed to arbitrate.

Plaintiff also revisits his "inconsistent positions"
argument, contending that "legal support exists for same,
although ultimately rejected by the District Court."  However,
this is the argument which this Court found to be "untenable."
See Ruling at 8.  Indeed, the Court observed that "the Federal
Arbitration Act, which governs the NASD arbitration at issue
here, requires arbitration even where the result would be the
possibly inefficient maintenance of separate proceedings in
different forums, and the Court distinguished Security Insurance
Co. of Hartford v. Trustmark Insurance Co., 283 F. Supp. 2d 602
(D. Conn. 2003), cited by plaintiff both in his preliminary
injunction motion and in the instant objections.

To the extent plaintiff relies on the potential merit of his equitable estoppel argument to claim that his irreparable harm position was non-frivolous, that argument also must be rejected. First, plaintiff did not assert his equitable estoppel argument in the context of his irreparable harm claim in his motion for preliminary injunction.  Further, that argument cannot bolster plaintiff's position because the arbitrator could have considered plaintiff's equitable estoppel argument; indeed, as defendant notes, "whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 85 (2002). Thus, where plaintiff admittedly was obligated to arbitrate any dispute with WRSC, he cannot rely on equitable estoppel to claim irreparable harm in being forced to so arbitrate.

Accordingly, the Court overrules plaintiff's objections to Magistrate Judge Margolis's finding of sanctionable conduct as to the irreparable harm argument in his motion for preliminary injunction.

B.   Rule 11 Safe Harbor Requirement

Next, plaintiff contends that sanctions cannot be imposed because defendant violated Rule 11's notice, or "safe harbor" requirement, by demanding that plaintiff withdraw the operative complaints in this and two other related actions.  Plaintiff

13

argues that because the motions to dismiss filed by WRSC
affiliates in the related actions were each denied in part, and
because plaintiff's complaint in this action was dismissed only
on the condition that WRSC withdraw its return of payment claim
in the arbitration, it was reasonable for him not to withdraw his
complaints.

Plaintiff's argument must be rejected.  First, the claimed
potential merit of plaintiff's complaints in the related actions
is irrelevant to plaintiff's complaint in this action and to the
sufficiency of defendant's sanctions notice as to this action.
Further, defendant's notice was sufficient to put plaintiff on
notice as to its intent to move for sanctions based on the
claimed frivolity of both plaintiff's complaint and his motion
for preliminary injunctive relief in this action.  See Motion for
Sanctions [Doc. # 37] at 16-20 (addressing, inter alia, the
claimed frivolity of plaintiff's irreparable harm argument).

C.   Defendant's Waiver of Return of Payment Claim

Plaintiff's last argument goes to the claimed merits of his
equitable estoppel argument.  As discussed above, in examining
this argument, the Court determined that defendant's arbitration
Statement of Claim seeking return of all or portions of the
$655,194 payment could "be viewed as the attachment of a
'condition' on Lawrence's acceptance of the funds," which WRSC
had explicitly stated in its letter it would not place on his

14

acceptance of the payment.  <u>See</u> Ruling at 22 (the letter stated that "the payment is not some kind of trap and we did not place any conditions on your acceptance of it in our letter of September 23, 2003, nor do we now").  However, because defendant agreed to amend its Statement of Claim to remove its request for return of the $655,194 payment, the Court concluded that the December 2003 letter could not be construed as a misrepresentation intended to induce plaintiff to act to his detriment sufficient to support plaintiff's equitable estoppel claim.  Thus, the Court recognized that without this waiver by defendant of its claim for return of payment in the arbitration, plaintiff's equitable estoppel claim could have merit.

Defendant's arguments to the contrary are inapposite. Defendant argues that "[p]laintiff's attempt to portray defendant's decision not to seek recovery in the arbitration of its $650,000 payment to plaintiff as a favorable settlement of this case is . . . unfounded.  As the Magistrate Judge recognized, and apparently plaintiff has forgotten, plaintiff repeatedly represented to this Court that he did not have a dispute with defendant, and certainly not one that could justify a $650,000 settlement."  Def. Reply at 12.  Defendant contends that it "has made clear over and over again [that] [it] paid plaintiff this money not as a settlement of any claim that plaintiff has ever asserted against defendant.  Rather, defendant

15

paid plaintiff the money because defendant thought it owed plaintiff the money." First, defendant's latter argument is directed to the initial payment to plaintiff, and not to its subsequent waiver of its right to seek return of that payment in arbitration made in order to obtain dismissal of plaintiff's complaint by this Court. Furthermore, rather than a settlement per se, the Court's conditioning dismissal on defendant's withdrawal of its return of payment arbitration claim indicates some merit to plaintiff's equitable estoppel argument.

Thus, plaintiff had a colorable claim for declaratory and/or injunctive relief on the basis of his equitable estoppel argument and therefore, particularly given the Second Circuit's caution against awarding sanctions and the high bar for conduct warranting sanctions, and for the reasons described above in Pt. IV. A, sanctions are only appropriate as to plaintiff's motion for preliminary injunction on the basis of his objectively unreasonable and "untenable" argument regarding irreparable harm.

## V. Conclusion

Accordingly, for the foregoing reasons, plaintiff's objections [Doc. # 80] are SUSTAINED in part and OVERRULED in part, and Magistrate Judge Margolis's Reconsideration Ruling [Doc. # 77] is MODIFIED to limit sanctions to plaintiff's filing and maintenance of his motion for preliminary injunction. Magistrate Judge Margolis left open in her initial Sanctions

Ruling against whom sanctions were to be imposed, and in what amount.  Pursuant to the Magistrate Judge's direction, defendant filed affidavits detailing the monetary sanctions sought, and plaintiff was given an extension to file his opposition to these affidavits within 21 days of this Court's ruling on plaintiff's objections (see [Doc. # 79]).  Having now modified the Magistrate Judge's ruling, the Court directs defendant to file with Magistrate Judge Margolis an amended affidavit detailing the sanctions sought in light of this Court's modification of the sanctions award by **January 18, 2007,** with plaintiff's opposition by **February 1, 2007,** and defendant's reply by **February 8, 2007.**

Lastly, as the Court noted above, defendant filed a notice pursuant to this Court's dismissal ruling stating that it had withdrawn its arbitration return of payment claim [Doc. # 57], to which notice plaintiff objected [Doc. # 58].  Specifically, plaintiff objects on the basis that although defendant withdrew its return of payment claim, it also added a request for "such further relief as the Arbitration Panel deems appropriate."  Pl. Response [Doc. # 58] at 1.  Accordingly, plaintiff now seeks that WRSC confirm in an amended notice to this Court that "such new catch-all language does not include any request for a refund of the subject payment."  Id. at 2.  However, in light of defendant's express withdrawal of its return of payment claim, no arbitrator could find "appropriate" an award including such

17

relief.  Were defendant to press for such relief in light of its representations, such conduct could be sanctionable.  Thus, based on this construction, plaintiff's objection in this respect is overruled.

Inasmuch as the Complaint in this case was dismissed on March 4, 2005 (see Doc. # 55), the Clerk is directed to CLOSE this case.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton
United States District Judge

**Dated at New Haven, Connecticut this 28th day of December, 2006.**

18